# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
November 27, 2018

v

ARZELLE VERNER NEELY,

Defendant-Appellant.

No. 338207
Wayne Circuit Court
LC No. 16-000810-01-FH

Before:  M. J. KELLY, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of felon in possession of a firearm (felon-in-possession), MCL 750.224f, carrying a concealed weapon, MCL 750.227, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and operating a vehicle while his license was suspended, MCL 257.904(1)(b).  Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 46 months to 15 years' imprisonment for felon-in-possession, 46 months to 15 years' imprisonment for carrying a concealed weapon, two years' imprisonment for felony-firearm, and 67 days, time served, in jail for operating a vehicle while his license was suspended.  We affirm.

Defendant argues that his Sixth Amendment right to effective assistance of counsel was violated when his attorney failed to (1) object to the testimony of his former girlfriend's mother, Cheryl Smith (Cheryl), as prejudicial and irrelevant, (2) argue that defendant did not possess state-issued identification at the time of his arrest, or introduce defendant's current state-issued identification as corroboration, (3) object to the prosecution's use of the statement of his former girlfriend, Ashley Booker, as hearsay, (4) impeach Cheryl with her prior inconsistent statement, and (5) call Booker as a witness.  We disagree.

Whether a defendant is denied the effective assistance of counsel is a mixed question of fact and constitutional law.  *People v Lane*, 308 Mich App 38, 67; 862 NW2d 446 (2014).  Findings of fact are reviewed for clear error, while questions of law are reviewed de novo.  *Id*. at 67-68.  In this case, because the trial court did not conduct an evidentiary hearing, "our review is limited to mistakes apparent from the record."  *Id.* at 68.

The Michigan Constitution and the Sixth Amendment to the United State Constitution both guarantee the right to the effective assistance of counsel.  *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016).  To succeed on an ineffective assistance of counsel claim,

-1-

defendant must demonstrate that "(1) defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id*. This Court presumes that counsel provided defendant with effective assistance. *Lane*, 308 Mich App at 68. Counsel's presumptively strategic trial decisions, such as calling witnesses, questioning them, and presentation of evidence or arguments, will not be second-guessed on appeal. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

## I. FAILURE TO OBJECT TO CHERYL'S TESTIMONY

"Evidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense." *People v Houston*, 261 Mich App 463, 467; 683 NW2d 192 (2004)(citation omitted), aff'd but modified on other grounds 473 Mich 399 (2005). Relevant evident is generally admissible at trial. *Id*. at 466; MRE 402.

The *Houston* Court held that the defendant's possession of a .380–caliber pistol three days before the crime was directly relevant to identifying defendant as the killer. *Id*. at 467. In this case, Cheryl's testimony that defendant had a revolver on December 24, 2015, was directly relevant to proving that the revolver found in the Ford Fusion on December 27, 2015, belonged to defendant. Because Cheryl's testimony was relevant and therefore admissible, defense counsel was not ineffective when he failed to object to her testimony on relevancy grounds. Failing to raise a meritless or futile objection does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## II. FAILURE TO ARGUE THAT DEFENDANT LACKED STATE IDENTIFICATION

Defendant claims that he did not have state-issued identification on the day that he was arrested. Accordingly, he did not tell Officer Hollis Smith and Officer Andrew Wilson that his identification was located in the center console of the Ford Fusion. This contradicts Officer Wilson's testimony that he heard Officer Smith ask defendant for identification, and defendant reply that his identification was in the center console. On appeal, defendant argues that his trial counsel was ineffective when he failed to argue that defendant neither had a state-issued identification on the day that defendant was arrested nor did he introduce defendant's current state identification card, which was issued August 4, 2016. The date of the traffic stop and defendant's arrest was December 27, 2015.

While it may be the case that defendant did not have the identification card issued in August 2016 or a driver's license on the date of his arrest, this does not mean that defendant had no identification whatsoever. Officer Wilson testified that defendant told Officer Smith "that his ID was in the middle console." Officer Wilson did not testify regarding what type of identification defendant said that he had or what type of identification the officers observed in the center console. Accordingly, it is not clear that introducing evidence that defendant's Michigan identification card was not issued until August 4, 2016, would have been relevant because Officer Wilson did not testify that the ID found in the center console was in fact a Michigan identification card as opposed to some other form of identification.

Furthermore, while defense counsel did not state in his opening statement or argue in his closing argument that defendant did not have identification when he was arrested, defense counsel did ask defendant about the identification issue during his direct examination:

> *Q.* [The officer] asked you for license and registration?
>
> *A.* Yes.
>
> *Q.* Did you produce it?
>
> *A.* No, but I was like, I have no license or identification on my person at that time.
>
> *Q.* Okay.
>
> *A.* Nor in the car.

The direct examination of defendant later returned to the identification issue:

> *Q.* Okay. Were you asked to produce your . . . identification?
>
> *A.* Yes.
>
> *Q.* Okay. Did you produce it?
>
> *A.* No.
>
> *Q.* Did you give anyone permission as to where to find it?
>
> *A.* No.

Defense counsel, thus, gave defendant two opportunities to explain that he did not have identification with him when the officers stopped him. Defendant also stated during cross examination that "[he] wouldn't have told [the officer that he] had [an] ID right there with a gun." Defendant's statement gave the jury the opportunity to consider whether it believed that defendant would have told the officers that he had identification in the center console when he knew he also had a revolver in the same place.

Issues of witness credibility, absent exceptional circumstances, are exclusively determined by the jury. *People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015). Thus, it was the jury's duty to weigh the credibility of defendant's testimony against Officer Wilson's testimony. This Court cannot disturb the jury's decision to credit Officer Wilson's testimony over defendant's testimony. Because defense counsel asked defendant about the identification issue, and defendant's explanation was presented to the jury, defendant's claim on appeal that counsel should have argued that defendant lacked identification on the day he was arrested is meritless. Moreover, even though defense counsel did not address the identification issue in his closing argument, the decision of what evidence to highlight during closing argument is

presumed to be a matter of trial strategy, and this Court will not second-guess counsel on matters of trial strategy. *Putman*, 309 Mich App at 248.

### III.  FAILURE TO OBJECT TO BOOKER'S STATEMENT AS HEARSAY

Under MRE 801, hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 802 states that "[h]earsay is not admissible except as provided by [the Michigan Rule of Evidence]." Defendant argues that the prosecution improperly questioned defendant using Booker's statement to police, and that his trial counsel should have objected to Booker's statement as hearsay. Defendant does not identify what specific hearsay objection should have been made, nor does he assert that his Sixth Amendment right to confrontation was violated. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

Regardless, when a defendant opens the door to evidence regarding an otherwise inadmissible topic, the prosecution may question the defendant about that topic. See e.g., *People v Lukity*, 460 Mich 484, 498-499; 596 NW2d 607 (1999); *People v Horn*, 279 Mich App 31, 35; 755 NW2d 212 (2008). In this case, defendant referred to Booker's statement to the police during his testimony and claimed that Booker "lied to save her ass [after being] arrested." After defendant mentioned Booker's statement and alleged that she lied, the prosecution briefly questioned defendant about Booker's statement:

> *Q.* Yeah, so yeah, [Booker] did make a statement to the police, didn't she?
>
> *A.* Yes.
>
> *Q.* And in that statement she said that you were the driver, right?
>
> *A.* Yes.
>
> *Q.* And that there was never a gun in the car; she never placed a gun in there, did she?
>
> *A.* No.
>
> *Q.* No. In fact she had no idea where that gun came from, right?
>
> *A.* Excuse me?

Defendant opened the door to the prosecution's line of questioning regarding Booker's statement, and defense counsel's failure to "raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201.

### IV.  FAILURE TO IMPEACH CHERYL

-4-

Counsel may be ineffective if counsel "unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *Lane*, 308 Mich App at 68. In general, a witness may be impeached with a prior inconsistent statement. MRE 607; MRE 613; *People v Rodriguez*, 251 Mich App 10, 34; 650 NW2d 96 (2002).

At trial, Cheryl testified that on December 24, 2015, while defendant was sitting on Cheryl's couch, "a gun fell out of either his pocket or his ankle." She further explained that defendant wore his "pants down by [his] knees," and when he sat down, the gun "fell out on the right side." In her statement to police, however, Cheryl said that "[defendant] had a gun on his person. He moved it from his boot area to his rear pants pocket. It wouldn't stay because his pants kept falling down." The inconsistency between Cheryl's statement to the police and her testimony at trial was minor. Whether defendant moved the gun from his "boot area to his rear pants pocket," or whether the gun fell "out of his pocket or his ankle" to the floor hardly affects Cheryl's consistent testimony that defendant possessed a revolver on December 24, 2015. Moreover, when defendant testified, he asserted that Cheryl's testimony and statement were inconsistent. Defendant said that when Cheryl "was on the stand she said [that] the gun fell down my pants or [out of] my pocket . . . but in her statement [she said] that I pulled it out of my boot." The prosecution had the statement admitted as an exhibit so the jury could review it if it wished to.

Impeaching Cheryl with her inconsistent statement on a minor detail would not have changed the trial's outcome, particularly because defendant highlighted Cheryl's inconsistent statements during his testimony, and Cheryl's written statement was admitted into evidence. So, even if defense counsel should have impeached Cheryl with her inconsistent statement, his failure to do so did not prejudice defendant because the inconsistency was inconsequential, and the revolver was found in the Ford Fusion defendant was driving. Thus, defense counsel's failure to impeach Cheryl does not meet the second requirement of an ineffective assistance claim "that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Shaw*, 315 Mich App at 672.

## V. FAILURE TO CALL BOOKER AS A WITNESS

"Trial counsel's failure to a call a witness is only considered ineffective assistance if it deprived the defendant of a substantial defense." *Putman*, 309 Mich App at 248. "A substantial defense is one that could have affected the outcome of the trial." *Id*. Further, the decision whether to call a particular witness is presumed to be a matter of trial strategy, which this Court will not second-guess on appeal. *Id*.

Defendant argues that his trial counsel was ineffective for not calling Booker as a witness. In an affidavit from Booker attached to defendant's motion to remand, Booker claims that her friend put the gun in the "center consul [sic] of [her] car." Defendant, however, did not preserve his claim for ineffective assistance of counsel because he failed to move the trial court for a new trial or evidentiary hearing. *Lane*, 308 Mich App at 68. Because the trial court did not conduct an evidentiary hearing, "our review is limited to mistakes apparent from the record." *Id*. The record is limited to evidence that was presented to the trial court, and defendant cannot enlarge the record through the submission of additional documents on appeal. *People v Eccles*, 260 Mich App 379, 384 n 4; 677 NW2d 76 (2004). Thus, this Court cannot consider Booker's

affidavit, which is not part of the record, in determining whether defendant's trial counsel was ineffective when he failed to call Booker as a witness. *Id.*; *Lane*, 308 Mich App at 68.

Based on the record, defense counsel could have decided not to call Booker for a number of reasons. She was defendant's former girlfriend, and there were indications that their relationship may have soured. And as the prosecution argues, Booker could have testified that the gun belonged to defendant. Regardless, defense counsel's decision not to call Booker must be presumed to be a matter of trial strategy, which this Court will not second-guess. *Putman*, 309 Mich App at 248.

We affirm.

/s/ Michael J. Kelly
/s/ David H. Sawyer
/s/ Jane E. Markey